VAN BRUNT, P. J., BARRETT and O'BRIEN, JJ., concurred; INGRAHAM, J., concurred in result.

Judgment affirmed, with costs.

---

NATHAN KRAUSKOPF, Appellant, *v.* CLARENCE E. TALLMAN, Respondent.

*Perjury — when a deposition states facts from which it may be inferred that the false testimony was willfully and knowingly given — false imprisonment.*

In an action to recover damages for false imprisonment, the plaintiff claimed that the deposition upon which the warrant was issued did not charge any crime, and that for that reason the police justice acquired no jurisdiction; that, therefore, all the proceedings were void, and that the defendant who induced the police magistrate to act by his application for the warrant was liable as a trespasser.

The deposition stated that the plaintiff committed perjury by swearing falsely in a matter material to the issue upon a hearing before a justice of the Eighth District Civil Court, but did not state, in terms, that the false testimony was willfully and knowingly given — the false statement alleged being that the plaintiff having been asked on November 12, 1894, "Didn't you swear, in Jefferson Market Police Court, that you had complained to Mr. Smith about sights you had seen there?" answered, "No, sir." The deposition further stated that on the 13th of October, 1894, in the Jefferson Market Police Court, the plaintiff herein was a witness and was asked the following question : "Have you ever complained to Mr. Smith of the character of that house?" to which the plaintiff replied, "Yes, sir." That the plaintiff was then asked, "What did you see there?" to which he replied, "I told him I had seen a woman partly nude at the windows on that floor that was on the other side of us."

*Held*, that as the magistrate must have inferred that the plaintiff knew on the 12th of November, 1894, what testimony he gave on the preceding thirteenth of October, there was sufficient in the deposition to warrant the justice in concluding that the evidence was willfully given, and in issuing the process upon which the plaintiff was arrested, and that the justice having acted within his jurisdiction, the defendant was protected by the warrant and was not liable for false imprisonment, even had he taken such a part in the arrest as would constitute him a trespasser, had the warrant been void;

That if the plaintiff had forgotten in November the testimony that he gave the preceding October, it was a matter of excuse which it was not necessary should be negatived in the deposition.

Barrett and Patterson, JJ., dissented.

Appeal by the plaintiff, Nathan Krauskopf, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 14th day of February, 1898, upon the dismissal of. the complaint by direction of the court after a trial at the New York Trial Term.

· *Leopold Leo*, for the appellant.

*George M. Curtis*, for the respondent.

Rumsey, J.:

The action was brought for false imprisonment, and the plaintiff's complaint was dismissed at the close of his evidence, and from the judgment entered upon that dismissal of the complaint he takes this appeal.

It appears that on the 11th day of January, 1895, the defendant appeared before a police justice of the city of New York, and applied for a warrant to issue against the plaintiff for an alleged perjury. The information in writing was signed and sworn to by the defendant, upon which the warrant was issued and the plaintiff was arrested. A hearing was had before a police magistrate, at the end of which the plaintiff was discharged from custody, the magistrate holding that the crime of perjury had not in fact been committed by him.

After his discharge he brought this action against the defendant who instigated his arrest, as he says, for false imprisonment. The grounds upon which the plaintiff bases his right to recover are, that the information upon which the warrant was issued did not charge any crime, and for that reason the police justice acquired no jurisdiction; and, therefore, all the proceedings were void, and the defendant, who set the police magistrate in motion by his application for the warrant, was liable as a trespasser. The information upon which the police justice acted is set out at length in the complaint. The statute regulating the procedure in such cases requires that when an information is laid before a magistrate, of the com-

mission of a crime, he must examine on oath the informant and prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the party making them. (Code Crim. Proc. § 148.) As there is no allegation or proof to the contrary, it must be assumed that this information was taken by the police magistrate in the ordinary manner in which such things are done. The statute requires, further, that the depositions should set forth the facts stated by the prosecutor and his witnesses, tending to establish the commission of the crime and the guilt of the defendant (Code Crim. Proc. § 149), and if the magistrate is satisfied from them that the crime complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest. (Code Crim. Proc. § 150.) It will be seen, therefore, that the evidence required by the depositions to authorize the issuing of a warrant is such only as to satisfy the magistrate that a crime has been committed, and that the defendant was guilty of it. It is necessary that the facts stated in the depositions should be such as to warrant the two conclusions above stated, but it is not necessary that those facts should be stated with the particularity required in an indictment, or that the evidence should be conclusive, or even such as to satisfy the magistrate beyond a reasonable doubt. The object of the deposition is to set the law in motion to investigate the question whether the defendant accused is guilty of a crime, and evidence adduced before the magistrate to warrant the issuing of the process need only be something upon which his mind is called to act in determining the question of probable cause. (*Pratt* v. *Bogardus*, 49 Barb. 89, 94.)

It is necessary, therefore, to examine this deposition sufficiently to enable us to see whether there was evidence from which a reasonable man would infer that the crime of perjury had been committed. The statute prescribes that one who swears that he will truly testify upon any hearing or inquiry, or on any occasion on which an oath is required by law, and who, upon such hearing or inquiry or such occasion, willfully and knowingly testifies or states in his testimony any material matter to be true which he knows to be false, is guilty of perjury. (Penal Code, § 96.) This definition of the crime of perjury is not materially different from

that contained in the Revised Statutes. It is apparent that to make one guilty of it he must have taken an oath in a proceeding before one authorized to administer an oath; he must have given testimony which was material in that proceeding; he must have stated that matter to be true which he knew to be false, and that falsehood must be willful and to his knowledge. The deposition states in terms that the plaintiff here did commit perjury by swearing falsely in a matter material to the issue upon a hearing before a justice of the Eighth District Civil Court. The deposition does not state in terms that the false testimony was willfully and knowingly given, but it is not necessary in the deposition that such statements should be made in so many words if facts are stated from which the magistrate might reasonably be satisfied that those essential elements of the crime of perjury existed; and if he is so satisfied, it is his duty to issue the warrant, although the facts are not stated with that particularity or accuracy which would be required in an indictment.

The false statement alleged is that at the trial before a justice of the Eighth District Civil Court on the 12th of November, 1894, the plaintiff having been asked, "Didn't you swear in Jefferson Market Police Court that you had complained to Mr. Smith about sights you had seen there?" answered, "No, sir." The deposition states that on the 13th of October, 1894, in the Jefferson Market Police Court, at a hearing before a police justice named, the defendant was a witness, and was asked the following question: "Have you ever complained to Mr. Smith of the character of that house?" to which the defendant replied, "Yes, sir;" and the defendant was then asked, "What did you see there?" to which the defendant replied, "I told him I had seen a woman partly nude at the windows on that floor that was on the other side of us." The deposition further states that the deponent (the defendant) "was present at both examinations, and knows of his own knowledge that the defendant made the above-mentioned contradictory answers." That the testimony was contradictory is plainly to be inferred. Necessarily, then, the second statement could not be true, because it appears affirmatively by the affidavit of the defendant that the first statement was made, and it also appears that the second statement was made. There can be no doubt, then, upon this deposition, that the second statement, made on the 12th of November, 1894, was false testimony But

was it willfully and knowingly given? It must be inferred, and the magistrate was bound to infer, that the plaintiff knew what testimony he gave on the 13th of October, 1894. There is no presumption that he forgot it, and certainly, unless he had forgotten it, he must have known on the twelfth of November what testimony he had given on the thirteenth of October, and that, if the testimony had been given on the first occasion, that given on the second occasion was not true. The police justice to whom this paper was presented had a right to infer that the testimony was knowingly given. If it were not, if the plaintiff had forgotten in November what testimony he gave in October, that was a matter of excuse, but it was not necessary that the excuse should be negatived in the deposition.

Was there sufficient in the affidavit to warrant an inference on the part of the police justice that this evidence was willfully given? We think there was. In the first place, the statement was that he committed perjury. While that was a conclusion of law to some extent, yet it must be considered as an inference which the police justice was warranted in drawing from the facts stated. The word "willfully" has various meanings in the Penal Code. In some cases it is used to mean an act done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness. (*Wass* v. *Stephens*, 128 N. Y. 123, 128.) In other cases, and where the indictment is used in the Statute of Perjury, it is construed to mean with design, with some degree of deliberation. (29 Am. & Eng. Ency. of Law, 117.) We think that, upon the facts stated here, there was sufficient to warrant the justice in concluding that there was enough deliberation in the giving of this testimony to constitute willfulness. The attention of the plaintiff was called by the question to his former testimony. He was asked directly whether or not he had given it at such a time and such a place, and he deliberately answered that he had not. Certainly, that testimony thus given would be sufficient to warrant a jury in finding that the witness had deliberately sworn falsely on the twelfth of November. Such conclusions are permitted to be drawn every day in trials, and we see no reason why a justice to whom these facts are submitted, unexplained and uncontradicted, may not draw from these facts the same inferences which a jury upon a trial would be permitted to make.

The case is not one where it appears only that contradictory testimony has been given, leaving it in doubt which of the two contradictory statements is true; but it appears affirmatively, not only that two contradictory statements were given, but that, at the time the second one was testified to, the first one might have been presumed to be within the knowledge of the person accused; and that his attention was called to it so that he had an opportunity to consider in regard to it and deliberately testified in a different way. We think, therefore, that the statements in the deposition were sufficient to require the justice to determine whether or not the crime of perjury had been committed by the defendant. In that case, although his conclusion may have been erroneous, he acted within his jurisdiction and his issuing of the warrant is a protection to any person who acted under it. (*Hallock* v. *Dominy*, 69 N. Y. 238.) There can be no question that a warrant issued upon this process was sufficient in form to protect any one who acted upon it. It was in the form prescribed by the Code of Criminal Procedure and contained a statement of the crime as required by sections 151 and 152 of the Code of Criminal Procedure. The particulars of the crime were not required to be stated, and although a portion of these particulars were stated, yet the fact that the warrant contained more than was necessary is not sufficient to invalidate it. The process, therefore, upon which this plaintiff was arrested was sufficient. The justice had jurisdiction to issue it, and for that reason the defendant was not liable for a false imprisonment, even had he taken such a part in the arrest as would constitute him a trespasser had the warrant been void.

The plaintiff, however, relies upon the case of *Hewitt* v. *Newburger* (141 N. Y. 538), as holding that because to constitute the crime of perjury the giving of false testimony should be willful, it was necessary to allege in so many words that it was willfully committed, and because it was not so alleged the proceedings were void. In that case the plaintiff was arrested upon a charge of the crime of injuring property belonging to the City Mills, a corporation in the city of Amsterdam, in that he threatened to tear down a wall "now being erected by said corporation and being the property thereof, and the same is being built for the purposes of a dam and there is just reason to fear that the said Daniel C. Hewitt (the plain-

tiff) will tear down and demolish said wall, as he, the said Daniel C. Hewitt, hath, as above, threatened to do."

The crime alleged to have been charged is that of willfully or maliciously destroying a pier, boom or dam, lawfully erected or maintained upon any water in the State (Penal Code, § 639), or of unlawfully or willfully destroying or injuring real or personal property of another. (§ 654.) The court held that the information quoted above did not constitute a crime for the reason that it did not appear that the property destroyed was not the property of Hewitt. Nor did it appear that there was any willful or malicious intent in destroying it, or that the dam or wall was lawfully erected or maintained. This conclusion is necessarily correct. The destruction of the wall as alleged could not constitute a crime unless it was done under the circumstances forbidden by the Penal Code, and, therefore, it was absolutely necessary that there should appear in the information something from which it might be inferred that it was done under those circumstances. As nothing of that sort appeared, there was no crime charged, and, therefore, the process was void.

The distinction between that case and this is a very plain one. In this case there is evidence, as we have shown, from which the justice had a right to infer that the false swearing was done under such circumstances as to make it perjury. Therefore, the case is not authority in favor of the plaintiff here.

The conclusion of the learned court below was, therefore, correct, and the judgment entered upon his dismissal of the complaint should be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concurred; BARRETT and PATTERSON, JJ., dissented.

BARRETT, J. (dissenting):

The plaintiff was arrested upon a warrant issued by a police magistrate at the instance of the defendant. He claims that the warrant was void because the affidavit upon which it was founded contained no allegation or proof of the commission of a crime. These positions are fully sustained by the case of *Hewitt* v. *Newburger* (141 N. Y. 538). The charge there was that the person arrested had threatened to tear down and destroy a wall in process

of erection and owned by a certain corporation, which was being built for the purpose of a dam. It was sought to support the warrant under two sections of the Penal Code. The first (§ 639) makes it an offense willfully or maliciously to displace, remove, injure or destroy a dam lawfully erected upon any water within the State. The second (§ 654) provides that a person who unlawfully and willfully destroys or injures any real or personal property of another, shall be punished as therein specified. The Court of Appeals held that if the warrant were issued under section 639, it should have alleged that the accused " willfully or maliciously " threatened to do the act; and if it were issued under section 654 it should have averred that he so " unlawfully and willfully " threatened. " The fatal vice of the information and warrant," said BARTLETT, J., " is that they utterly fail to aver the unlawful and criminal intent which constitutes crime." In the case at bar the charge was that the present plaintiff committed perjury by swearing falsely in a material matter upon the hearing of a cause pending before a District Court justice. This allegation charged no crime. Swearing falsely is not perjury. (2 Bish. Crim. Law, § 1046.) The testimony given must be " willfully and knowingly false," or the affiant must in his testimony state some material matter to be true which he knows to be false. (Penal Code, § 96.) The vice in the affidavit here is precisely the same as it was in the case cited. There was here a total defect of evidence as to the existence of the essential fact that the accused knew that the testimony which he gave was false. And further, there was a total omission even to charge him with such knowledge. In the case cited, the court held that because the wrongful purpose was lacking in the information, " the act of the recorder was wholly without jurisdiction, and the warrant and all proceedings under it were absolutely void." (P. 543.) The conclusion here is necessarily the same.

The only distinction suggested between that case and the present is, that here there was, as the majority think, evidence from which the justice had a right to infer the corrupt intent. The fallacy of this attempted distinction is that there was no such evidence and no such inference. The justice was asked to, and he did, infer false swearing. But there both proof and charge stopped. He was not asked to infer the corrupt intent, either from the inherent

character of the alleged false swearing, or from independent evidence. The defendant was careful to limit his charge to perjury by false swearing — which, without its corrupt intent, was not perjury at all. The error, it seems to me, is in failing to distinguish between independent inferences, namely, between the inference of false swearing and that of corrupt intent with regard thereto. The testimony which the plaintiff gave before Justice Stiner in the District Court was not in terms contradictory of that given upon the earlier occasion. The plaintiff denied that he had complained to Smith about the sights he had seen in the house in question. Upon the earlier occasion he admitted, not that he had complained to Smith about the sights he had seen, but of the inherent character of the house. He also admitted telling Smith that he had seen a woman partly nude at the windows of the house, but not that he had complained to Smith of it. Undoubtedly, however, an inference might justly have been drawn that the denial was in substance inconsistent with this previous testimony. But it was not necessarily or literally so. So far as the defendant deposed that the denial was false because of the inference which he had drawn from the previous statements, and so far as the justice coincided with him, I have nothing to say. That was reasonable and justifiable. The very fact, however, that the testimony given upon the one occasion was not in terms inconsistent with that given upon the other; that the inconsistency depended upon inferences to be drawn from the words used on the respective occasions, gives force and point to the requirement of the statute. If ever there was a case when, before charging the crime of perjury, further proof of the corrupt intent was indispensable, surely it was here, where the perjury assigned was the denial of previous statements which had to be pieced together and combined to place before the mind the concrete affirmative upon which the falsity of the denial was predicated. The defendant went through this mental operation, and drew the inference which brought him to the point where he felt justified in charging that the denial was false. He stopped there, however, and the omission to supplement this with the further charge of corrupt intent was evidently deliberate. There was no reason why the defendant should not have drawn the further inference of willful and corrupt perjury, had such inference

been permissible, or had his conscience allowed it. The undoubted fact is that he did not venture to make the further charge.

It is suggested that there may have been further proof in addition to the defendant's affidavit. This, however, is negatived by the pleadings. The plaintiff averred that the defendant made and filed the affidavit, and that, *upon that affidavit,* he caused the justice to issue, and the justice did, in fact, issue, the warrant. That averment is admitted in the answer. The plaintiff further averred that under and in pursuance of said affidavit so made and filed, and said warrant so issued, he was arrested. That, too, is admitted. It is plain, therefore, that the provision of sections 148 and 149 of the Code of Criminal Procedure were not otherwise resorted to, and that the defendant cannot shield himself under any presumption that further evidence showing a corrupt intent was submitted to the justice.

It is said, however, that even upon the statements contained in the affidavit, the magistrate has reasonable ground to infer the corrupt intent. The only suggestion upon this head in the majority opinion is that the plaintiff knew what testimony he had given in October, and that there was no presumption that he had forgotten it in November. This may be quite true, but it does not touch the real question. Possibly, probably even, the plaintiff in November remembered, in a general way, what he had testified to in October, not necessarily the precise words, but their substance or general import. But yet he may, in perfect good faith, have denied complaining to Smith of the sights in the house, honestly believing that the denial was entirely consistent with his previous statements. That depended upon the construction of language, with regard to which he could honestly draw inferences as well as the defendant or the justice. Whether he drew such inferences corruptly or innocently depended upon more than his mere memory. It, of course, depended upon that in a measure. But it also and mainly depended upon the precise questions put to him upon the previous occasion and the precise answers which he gave thereto. Upon the trial before Justice STINER his attention was not called to these precise questions and answers. His previous testimony was not read to him or referred to in any specific or pointed way. He was simply asked a single question, namely, whether on the previous trial he gave a specific

answer to a specific question. That particular question was never in fact put to him upon the previous trial and, consequently, he never answered it yea or nay. How, then, can it be said that his denial of itself evidenced a corrupt intent? The latter could only be evidenced by proof that he believed he had given testimony upon the previous trial which amounted or was equivalent to that which he so denied; and of this there was not a scintilla of evidence direct or inferential in the defendant's affidavit, or in the extracts from the plaintiff's testimony quoted therein. It follows that the affidavit was hopelessly barren of proof or charge of corrupt intent, and that the case is precisely parallel to *Hewitt* v. *Newburger* (*supra*).

The only question remaining is whether the defendant was responsible for the arrest. His responsibility is made out upon the pleadings. He admits, as we have seen, that he made the affidavit upon which the justice acted. In this affidavit he "asks that the defendant be arrested and held to answer" upon the charge which it contains. He also admits that the warrant was issued and the plaintiff arrested upon this affidavit and request. In the concluding paragraph of the complaint it is alleged that the defendant so caused the arrest of the plaintiff with intent to injure the plaintiff. To this allegation the defendant interposes a negative pregnant, namely, a denial that he caused the arrest of the plaintiff with intent to injure the plaintiff. He thus admits that he caused the arrest, but did not cause it to injure the plaintiff. It is clear, therefore, that the defendant was, like the defendant in *Hewitt* v. *Newburger* (*supra*), "active and officious in procuring the arrest." He cannot, therefore, escape upon the plea that he did no more than state his case to the magistrate, leaving the question as to the propriety of a warrant to that officer's judgment. (*Von Latham* v. *Libby*, 38 Barb. 339.) The latter case was distinguished in *Miller* v. *Adams* (52 N. Y. 409, 413). Judge GROVER said: "There (in *Von Latham* v. *Libby*) all that was done by the defendant was to present the case for the action of the magistrate. Here the attorney of the defendant *applied to the judge to issue the attachment,* and delivered it to the sheriff for service. This clearly made the defendant liable in case the attachment was void for want of jurisdiction in the judge or for any other cause."

Upon the pleadings and proofs as they stood when the plaintiff rested, a *prima facie* case of a false arrest for which the defendant was liable was made out, and the nonsuit was erroneous.

The judgment should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, J., concurred.

Judgment affirmed, with costs.