MILDRED H. JONES, Plaintiff, v. GORDON PERRY, Defendant.

County Court, Oneida County, December 4, 1926.

Malicious prosecution — action for malicious prosecution and false imprisonment predicated on arrest of plaintiff for crime of " breach of the peace " and subsequent discharge — evidence shows plaintiff ordered defendant from farm he had purchased, whereupon he swore to information upon which justice of peace issued warrant charging said crime — testimony of justice of peace indicating withdrawal of complaint and discharge of plaintiff warrants finding that case had such termination as to become basis for action for malicious prosecution or false imprisonment — termination of proceedings and lack of probable cause sufficiently alleged — testimony offered by plaintiff as to conversation between attorneys for plaintiff and defendant wherein defendant's attorney proposed to drop proceeding in event plaintiff would vacate farm admissible as part of res gestæ — fact that magistrate issued warrant is not available to defendant as defense to allegation of malicious prosecution — evidence shows plaintiff committed no crime — instructions — jury not misled by charge of court that verdict for plaintiff should be returned which was subsequently withdrawn.

In an action for malicious prosecution and false imprisonment predicated upon the arrest of the plaintiff for the crime of " breach of the peace " and her subsequent discharge, evidence showing that after the plaintiff had ordered the defendant from a farm upon which plaintiff resided and which defendant had purchased at a sale in a partition action, defendant swore to an information upon which a justice of the peace issued a warrant charging said crime, together with testimony of the said justice indicating the withdrawal of the complaint and the subsequent discharge of the plaintiff, warrants a finding that the case

had such a termination as to be the basis for an action for malicious prosecution or false imprisonment.

Allegations as to termination of proceedings and lack of probable cause, being properly stated in the count for malicious prosecution, are sufficient, although they do not appear in the count for false imprisonment with equal definiteness.

Testimony offered by the plaintiff as to a conversation between the attorneys for said plaintiff and the defendant wherein the attorney for the defendant was quoted as saying that if the plaintiff would vacate the farm which the defendant had bought, the defendant would drop the proceeding, is admissible as part of the *res gestæ*, for the remarks were made in reference to the case in which said defendant's attorney was retained and apparently were made on his client's behalf and as such were part of his conduct of the case; it is immaterial whether or not the statement was made in the presence of the justice or outside in his dooryard.

The fact that a duly constituted magistrate issued the warrant upon which the plaintiff was arrested and detained is not available to the defendant as a defense to plaintiff's allegation of malicious prosecution, for the defendant must stand responsible for unwarrantably setting in motion the criminal machinery which brought upon the plaintiff the indignity of arrest and detention, particularly where there is nothing to show that the plaintiff committed a crime.

The fact that early in its instructions to the jury the court stated that the jury should return a verdict for some amount in favor of the plaintiff, and subsequently withdrew the statement, did not mislead the jury where, immediately before the case was given to the jury the court declined to direct a verdict for some amount in plaintiff's favor and repeated its statement that the jury must find malice on the part of the defendant before a verdict against him could be found.

MOTION made upon the minutes at the end of a jury trial, to set aside a verdict in favor of the plaintiff.

*D. E. Powers* [*E. Fitzgerald* of counsel], for the plaintiff.

*Lee, Dowling & Brennan,* for the defendant.

HAZARD, J. Defendant purchased at a sale in a partition action a farm upon which the plaintiff resided, and in which she had an interest. Shortly after receiving the referee's deed he went to the farm in question and commenced to do some plowing. Plaintiff appeared upon the scene and ordered him off, and he thereupon departed. It is not claimed that any force was used or that anything in the nature of an assault occurred; but defendant repaired to the home of a justice of the peace in that town and swore to an information upon which the magistrate issued a warrant, alleging the plaintiff had committed the crime of " breach of the peace." Assuming that all the facts sworn to in the information were true, I think it may safely be decided that no crime was committed; and no such crime as " breach of the peace " is to be found in the Penal Law. The plaintiff was arrested, the case adjourned, and upon the adjourned day she was subjected to some further

restraint; and finally according to the statement of the justice, the plaintiff was discharged. Thereupon this action was brought, and after a trial, the jury has awarded a small verdict to the plaintiff, and this motion is to set that verdict aside.

The complaint in the action contains two counts, one of which sets up a cause of action for false imprisonment, and the other for malicious prosecution. The grounds upon which this motion is urged will be considered in the order in which they appear in the moving party's brief.

Firstly, that the complaint is insufficient in that there is no allegation of termination of the proceedings, and no allegation of lack of probable cause. Both these points are untenable, as a reading of folios 7 and 8 of the complaint will demonstrate. It is true that the allegations do not appear, at least with equal definiteness, in the first count of the complaint, but as I considered the second count, that of malicious prosecution, as the most tenable of the plaintiff's claims, and both those elements are alleged therein, I must rule against the defendant upon those points.

The next claim is in effect that there was no such termination of the criminal proceedings as would authorize the bringing of the action upon either count. Just what happened that day is more or less in controversy, but there can be no doubt but that the defendant was discharged, or at least that there was definite evidence to that effect, as witness the following from the testimony of the justice: " Q. Was the defendant discharged that day? A. Yes. Q. By you as justice? A. Yes." It was the understanding of the justice, as detailed by the evidence, that the complaint was withdrawn and the prisoner discharged. I think the plaintiff was within the law as defined in the case of *Halberstadt* v. *N. Y. Life Ins. Co.* (125 App. Div. 830), where it is said (p. 832): " It is a firmly established rule that an action for malicious prosecution cannot be maintained unless it appears that the prosecution complained of has terminated favorably to the complainant. Such a termination may be by acquittal, or a dismissal of the charge or by a refusal of the prosecutor to proceed further with the prosecution, and it is generally sufficient to show that the prosecution has terminated, in any manner, so long as that particular prosecution has so far ended that there can be no further proceeding therein, and no further prosecution for the alleged offense *without the commencement of a new proceeding.*" The court announces the existence of another rule to the effect that " It is not a sufficient determination of the prosecution to sustain an action for malicious prosecution if that determination has been brought about *by a fraud on the part of the accused,* or *by a compromise with his accuser.*" There certainly was no fraud on the part of the

plaintiff herein, nor do I think there was what might fairly be called a compromise. In the first place there was nothing to compromise, that is, there had been no crime alleged against the defendant. It is true that the complainant endeavored to get an adjustment of the criminal proceeding by withdrawing it, with the understanding that Miss Jones would vacate the farm, but her attorney, Mr. Powers, testified with reference to that: " Brennan said to me, if you have her move out, I'll withdraw the action." I said: " I'll enter into no agreement with reference to this arrest. You can try her if you want to. There was no talk about her getting out in 15 days and they would withdraw the suit. They proposed it and I replied as above. The justice said: ' Let her go.' " I think that for the purposes of this case I must hold that was a sufficient termination of the criminal action in favor of this plaintiff. " It is a sufficient termination of the original proceeding to serve as a basis for an action of malicious prosecution that plaintiff was discharged, or the original proceeding was dismissed at a preliminary hearing * * * ; that the grand jury failed to indict; * * * a dismissal of a suit on a stipulation signed by both parties providing that each party shall pay his own costs or at plaintiff's costs is a sufficient termination thereof in defendant's favor to enable him to maintain the action." (26 Cyc. 58.)

The next point raised by the moving party is that the testimony offered by the plaintiff as to the conversation between Mr. Powers and Mr. Brennan was inadmissible against the defendant and highly prejudicial. This relates to the testimony referred to above, namely, that Mr. Brennan proposed to drop the proceeding if Miss Jones would vacate the farm which his client had bought. It is claimed that the attorney's statements were hearsay only, but I am unable to agree with that view. Whether made in the presence of the justice or outside in his dooryard, whatever remarks the complainant's attorney made were with reference to the case in which he was retained and were made on his client's behalf, and were a part and parcel of his conduct of the supposedly criminal case; and the mere fact, if it is a fact, that some or all of the remarks might not have been made actually in court, does not alter the attorney's status at all, and no case cited by the moving party in his brief is authority to the contrary. For instance, *Smith* v. *Bradhurst* (18 Misc. 546) holds that an attorney has no implied authority to settle his client's suit such as authorized him to bind his client by an agreement of settlement *involving payments*. *Lytle* v. *Crawford* (69 App. Div. 273, 278) reads: " While attorneys *engaged in the actual management of a cause* may bind their clients by admissions, while so engaged or by statements and correspondence relating thereto,

yet they have no authority under a general retainer to compromise an action or to bind a client by statements that he has no cause of action, or that he has surrendered whatever rights he possessed." The first part of the quotation above clearly points to the state of affairs which existed in this case. *Jefferson Bank* v. *Gossett* (45 Misc. 630) was a case where an admission was so faulty in its terms that it was held a judgment could not be predicated upon it. It was an admission with reference to the delivery of goods, and it was held that it did not include an admission as to their price. In the case of *Lewis* v. *Duane* (141 N. Y. 302, 314) it is said: " An attorney, as such, may not compromise the rights of his client *outside of his conduct of the action,* or accept less than the full satisfaction sought, or release his client's right, or subject him to a new cause of action." The italics above are mine; and are again made to call attention to the fact that that case is to be differentiated from the one at bar. In that case the evidence offered was of statements made by an attorney then deceased, as to what the effect of a certain foreclosure which had been conducted by him would have; and the evidence was excluded, and the Court of Appeals held its exclusion was not error, using the language quoted above. *Mandeville* v. *Reynolds* (68 N. Y. 528) holds that an attorney whose legal status, as such, had long since expired had no authority to compromise or to direct a sheriff to make an untrue return on an execution. *Bush* v. *O'Brien* (164 N. Y. 205) holds that an attorney is not authorized by his retainer to satisfy a judgment without payment, nor to make a compromise or a release. It is said that " He may discontinue an action, because that relates to the conduct of the suit, and is within his retainer, and not to the cause of action." None of these cases, for the reasons which I have undertaken to indicate, seem to me to at all sustain the moving party's contention that an error was committed in admitting the conversation which took place between him and the opposing attorney at the scene of the trial of the case in which he was representing the complainant, and which were clearly a part of the *res gestæ,* and I feel compelled to overrule the contention.

The next contention of the moving party is to the effect that " The evidence produced upon the trial did not make out a case of false imprisonment against the defendant, and the submission of the same to a jury was error." In this connection I recall that I expressed, during the trial, some doubts about the validity of the false imprisonment count, but held that the count setting forth malicious prosecution was sufficiently proven to go to the jury. The complaint must be considered as a whole, at least to this extent, that if either one of the counts was sustained by the

evidence, plaintiff was entitled to have her case submitted to the jury. The substance of the claim which we are now considering, as made by the moving party here, is that inasmuch as a warrant was issued by a duly constituted magistrate, that the complainant is thereby protected.

I am aware of the line of cases of which *Whitney* v. *Hanse* (36 App. Div. 420) is a good example, in which it is said (p. 422): " If a person merely lays a complaint before a magistrate in a matter over which the magistrate has a general jurisdiction, and the magistrate grants a warrant upon which the person charged is arrested, the party laying the complaint is not responsible for any assault and false imprisonment, although the particular case may be one in which the magistrate has no authority to act;" and also, to quote another one of these cases (*Krauskopf* v. *Tallman*, 38 App. Div. 273), in which (at p. 278) it is said: " The process, therefore, upon which this plaintiff was arrested was sufficient. The justice had jurisdiction to issue it, and for that reason the defendant was not liable for a false imprisonment, even had he taken such a part in the arrest as would constitute him a trespasser *had the warrant been void.*" I am again myself italicising the last five words of the above quotation, for the reason that I think they point out the difference between those cases, and many similar ones, and the case at bar, because I feel constrained to decide the *warrant in this case was void.* I will make another quotation from *Whitney* v. *Hanse* (*supra*) where (at p. 423) it is said: " If the defendants had actively and personally participated in the arrest of the plaintiff, * * * a different rule would apply, *as it would also if the act charged by them against the plaintiff had been clearly lawful and innocent.*" Again, the italics are mine; and I have used them because they clearly show the distinction between that case and this, because in this case the acts charged are clearly lawful and innocent. In other words, if all that was said in the complaint was true, the defendant had committed no crime. Under such circumstances I am convinced that this plaintiff should have been exempt from arrest; and the defendant cannot be protected behind a warrant for the issuance of which there was no authority whatever. To hold otherwise would be to destroy any shred of protection which any citizen might have, and throw every one open to arrest for any and every fanciful grievance, and it cannot be a sufficient answer if one is arrested without cause to say that some justice of the peace decided that what he had done constituted a crime. For instance, a man might swear that a neighbor had made faces at him, or that he had been guilty of chewing tobacco, or any similar thing, and if that statement was put in the form of a criminal

information, and some justice of the peace was improvident or ignorant or malicious enough to issue a warrant for some fanciful crime, I cannot help but believe that the person who thus unwarrantably set the criminal machinery in motion is liable in an action for malicious prosecution. Nor are we lacking in authority on this proposition. The case of *Blodgett* v. *Race* (18 Hun, 132) sustains this contention admirably. On page 133 the court says: " The magistrate must have evidence of probable cause, both as to the commission of the offence and the guilt of the offender, *before he can have jurisdiction to cause the arrest.*" And later: " If facts and circumstances be stated, *sufficient to call for judicial determination*, the magistrate will be protected in his action, and this, although he might err in judgment." It will be noticed that as to the exemption above referred to, growing out of an error on the part of the magistrate, he is protected upon the hypothesis " if facts and circumstances be stated sufficient to call for judicial determination." Again I say if the citizen is to have any protection, a justice of the peace must be, and I think is called upon to exercise some sort of judgment and reason in issuing criminal processes; and a complainant in going before a magistrate and asking for a criminal process must have some responsibility along the lines of establishing by his information that some kind of a crime has been committed. It is claimed upon the argument that the defendant when he went before the justice simply went there for advice, and we are asked to suppose that he is the victim of undue official ardor in the magistrate; but the evidence does not warrant these claims, as witness the following from the testimony of the magistrate: " He laid his information and convinced me that I should issue a warrant, and I did so. * * * Q. Did he [Perry] tell you he wanted a warrant charging her with a crime? A. Yes. * * * Q. Did he tell you what crime she had committed? A. *She forbid him to come on the place.*" This seems to have been the complainant's idea of a " crime," and that was the basis for having this woman arrested; and the situation is that either she must suffer the indignity of arrest and detention, or else the defendant must compensate her for his mistake. The jury seemed to have taken the latter view, and with that decision I have no quarrel.

The last point raised by the moving party is in connection with the fact that early in the charge the court stated that the jury should bring in a verdict for some amount for the plaintiff. Later this statement was withdrawn; but the moving party claims to think the jury were misled by the original statement. Inasmuch as just before the case went to the jury the court declined to direct a verdict for some amount in favor of the plaintiff, and repeated

its statement that the jury must find malice on the part of the defendant before they could find a verdict against him, it was clearly impossible that the jury could have misunderstood or have been misled.

The motion for a new trial will be denied.